ROBBINS LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsllp.com
CRAIG W. SMITH (164886)
csmith@robbinsllp.com
ASHLEY R. RIFKIN (246602)
arifkin@robbinsllp.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991

SCHUBERT JONCKHEER
  & KOLBE LLP
ROBERT C. SCHUBERT (62684)
rschubert@sjk.law
WILLEM F. JONCKHEER (178748)
wjonckheer@sjk.law
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Co-Lead Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE BANC OF CALIFORNIA, INC. STOCKHOLDER DERIVATIVE LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | Lead Case No. 8:19-cv-621-DMG-DFMx<br><br>(Consolidated with Case Nos. 19-cv-1152 and 19-cv-05488)<br><br>CORRECTED DECLARATION OF ASHLEY R. RIFKIN IN SUPPORT OF PLAINTIFFS' CORRECTED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT<br><br>Date:    September 24, 2021<br>Time:    9:30 a.m.<br>Judge:   Hon. Dolly M. Gee<br>Ctrm:    8C, 8th Floor |


I, Ashley R. Rifkin, declare as follows:

1. I am Of Counsel at the law firm of Robbins LLP, Co-Lead Counsel for plaintiffs Kristopher Gordon and Colleen Witmer.[1] I am duly licensed to practice law in the State of California and admitted to practice before this Court. I submit this declaration in support of Plaintiffs' Corrected Unopposed Motion for Preliminary Approval of Derivative Settlement. I have personal knowledge of the matters stated herein and, should I be called upon, I could and would testify competently thereto.

## BACKGROUND

**A. Factual Background.**

2. On October 18, 2016, a post on SeekingAlpha.com by "Aurelius" entitled "BANC: Extensive Ties to Notorious Fraudster Jason Galanis Make Shares Un-Investible" alleged a web of improper relationships between Jason Galanis ("Galanis"), a Los Angeles financier and convicted fraudster, and Banc's then-current senior managers (the "Aurelius Blog").

3. Banc[2] publicly responded to the Aurelius Blog the same day, stating in a press release that "[t]he Company's Board of Directors has been aware of matters relating to Jason Galanis including certain claims he had made suggesting an affiliation with members of the Company, its Board, and/or its Executive team. The Board, acting through its Disinterested Directors, immediately initiated a thorough independent investigation led by Winston & Strawn, and has received regular reports including related to regulatory and governmental communications over the past year." Banc's press release went on to discredit the allegations in the Aurelius Blog.

---

[1] Plaintiff Donald Johnston ("Johnston") plans to file a request to withdraw as plaintiff in this consolidated derivative action.

[2] All capitalized terms used herein shall have the same meanings as set forth in the Corrected Stipulation and Agreement of Settlement dated August 27, 2021, and filed as Exhibit 1 hereto (the "Stipulation" or "Stip.").

4. On or about October 27, 2016, Banc received an inquiry from its independent auditor, KPMG LLP, raising concerns about allegations of "inappropriate relationships with third parties" and "potential undisclosed related party relationships." The Board created a Special Committee to investigate those concerns.

5. On January 23, 2017, Banc reported the Special Committee's conclusion that the Galanis allegations as they related to Banc were not true. The Special Committee also reported that the October 18, 2016 press release contained inaccurate statements.

6. The U.S. Securities and Exchange Commission ("SEC") also commenced an investigation, captioned *In the Matter of Banc of California*, Case No. NY-09592.

7. On January 23, 2017, the securities fraud class action *In re Banc of California Securities Litigation*, Case No. SACV 17-00118 (C.D. Cal.) (the "Securities Action") was filed. The Securities Action alleged that Banc, former Banc Chief Executive Officer, Steven A. Sugarman, and former Banc Chief Financial Officer, James J. McKinney, made false and misleading statements to Banc investors in connection with the allegations reported in the Aurelius Blog. The Securities Action was settled in 2020.

**B.   The Gordon Demand Futility Action.**

8. On September 26, 2017, Gordon filed a stockholder derivative action captioned *Gordon v. Sznewajs, et al.*, Case No. 8:17-cv-1678 (C.D. Cal.), alleging certain individuals—who constituted a majority of Banc's Board at the time—breached their fiduciary duties in connection with, among other things, the Board's response to the allegations made in the Aurelius Blog (the "*Gordon* Demand Futility Action").

9. Gordon alleged he was excused from making a pre-litigation stockholder demand to investigate the wrongdoing described in the *Gordon* Demand Futility Action because a majority of the Board was conflicted and faced substantial personal liability for the conduct described in the *Gordon* Demand Futility Action.

10. By Order dated June 13, 2018, the Court granted Defendants' motions to dismiss the *Gordon* Demand Futility Action, with leave to amend. On June 22, 2018, Gordon filed a notice of voluntary dismissal of the *Gordon* Demand Futility Action.

**C.     Plaintiffs' Litigation Demands Pursuant to Maryland Law.**

11.     Meanwhile, on November 17, 2017, Witmer sent a written demand to Banc's Board demanding the Board investigate and, if appropriate, pursue litigation relating to facts substantially similar to those alleged in the *Gordon* Demand Futility Action, including undisclosed relationships between certain of then current Banc's top executives and Galanis, other undisclosed conflicts of interest and related party transactions involving then current members of the Board, and alleged accounting manipulations (the "Witmer Demand").

12.     On January 8, 2018, Banc responded to the Witmer Demand, stating that the Company would not initiate any investigation in response until the related, then-pending *Gordon* Demand Futility Action was resolved.

13.     On February 12, 2018, Witmer filed a stockholder derivative action captioned *Witmer v. Sugarman, et al.*, Case No. 8:18-cv-00246 (C.D. Cal.) ("First *Witmer* Demand Refused Action") alleging wrongful refusal of the Witmer Demand. By Order dated August 23, 2018, the Court granted Banc's motion to dismiss the First *Witmer* Demand Refused Action.

14.     On May 22, 2018, Johnston sent a written demand to Banc's Board demanding that the Board investigate, address, remedy and commence proceedings against certain of the Company's current and former officers and directors for breach of fiduciary duties, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and any applicable laws, rules, and regulations related to the Company's internal controls and the alleged improper relationship between Banc's then current top executives, its Board, and Galanis (the "Johnston Demand").

15.     On July 3, 2018, after the *Gordon* Demand Futility Action was voluntarily dismissed, Gordon sent a written demand to Banc's Board demanding that the Board commence a good faith investigation into allegations of misconduct by certain current and former officers and directors and requested the Board take appropriate steps to remedy the

identified breaches of fiduciary duty and remedy Banc's weak internal controls (the "Gordon Demand").

16. On September 5, 2018, Johnston wrote to Banc requesting information relating to the purported investigation by the Board into the stockholder demands.

17. On January 4, 2019, Banc responded separately to the Witmer Demand, the Johntson Demand, and the Gordon Demand, and rejected each of them (the "Rejection Letters"). The Rejection Letters stated that Banc had investigated the subject matters raised in the demands and determined it would not be in the best interest of the Company to pursue the claims alleged or implement any additional remedial measures at the time. On January 24, 2019, Gordon wrote the Board requesting documents demonstrating the Board's process and conclusions in reaching its decision to reject the stockholders' demands. On February 25, 2019, Johnston wrote Banc similarly requesting such books and records. Banc declined to produce the requested books and records.

**D.    The Demand Refused Actions.**

18. On April 2, 2019, Gordon filed a stockholder derivative action in the United States District Court for the Central District of California (the "Central District"), captioned *Gordon v. Bennett, et al.*, Case No. 8:19-cv-00621-DMG-DFM (the "*Gordon* Demand Refused Action"), alleging Defendants violated their fiduciary duties in connection with the misconduct described in the Gordon Demand and further alleging the Board's decision to reject the demand was improper under Maryland law.

19. On June 10, 2019, Johnston also filed a stockholder derivative action in the Central District, captioned *Johnston v. Sznewajs, et al.*, Case No. 8:19-cv-01152-AG-DFMx, similarly alleging breaches of fiduciary duty arising from substantially the same misconduct as that alleged in the *Gordon* Demand Refused Action (the "*Johnston* Demand Refused Action").

20. On June 24, 2019, Witmer filed a stockholder derivative action in the Central District, captioned *Witmer v. Sugarman, et al.*, Case No. 2:19-cv-05488-AG-DFMx, also alleging misconduct substantially similar to that alleged in the *Gordon* Demand Refused

Action and the *Johnston* Demand Refused Action ("Second *Witmer* Demand Refused Action").

21. On September 23, 2019, the Central District entered an order approving the parties' stipulation to consolidate the *Gordon* Demand Refused Action, *Johnston* Demand Refused Action, and the Second *Witmer* Demand Refused Action (the consolidated action is referred to as the "Action"), and appoint Schubert Jonckheer & Kolbe LLP and Robbins LLP as co-lead counsel. *See Gordon* Demand Refused Action, ECF Nos. 56-57.

22. On November 15, 2019, Plaintiffs Gordon, Johnston and Witmer collectively sent another written litigation demand to Banc regarding additional potential misconduct which had recently come to light. The November 15, 2019 litigation demand requested that the Board investigate and take appropriate action to remedy, among other alleged wrongdoing, potentially improper kickbacks, undisclosed conflicts of interest, and retaliation against whistleblowers.

23. On November 22, 2019, Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint ("Consolidated Complaint"). The Consolidated Complaint alleges that the Individual Defendants—current and former officers and directors of the Company—breached their fiduciary duties to Banc. The Consolidated Complaint alleges that the Board's decision to reject the stockholder demands was improper under Maryland law.

24. On December 6, 2019, the parties submitted to the Court a stipulation (the "December 6 Stipulation") that provided a briefing schedule for Defendants' anticipated motions to dismiss the Action. On December 9, 2019, the Court entered an order approving the December 6 Stipulation.

## THE SETTLEMENT MERITS PRELIMINARY APPROVAL

**A.     The Settlement Efforts.**

25. Shortly after the Court approved the December 6 Stipulation, the parties commenced negotiations to settle the Action. After obtaining Banc's confidential, internal policies reflecting its relevant internal controls, Plaintiffs' counsel thoroughly analyzed

Banc's corporate governance, reviewed industry best practices, and proposed a slate of thorough corporate governance reforms that could strengthen the Company's internal controls and form a basis for a settlement of the Action. The Parties thereafter engaged in extensive and protracted arm's-length negotiations regarding the corporate governance reforms, which included numerous phone calls and emails, and several settlement proposals and counterproposals over the course of many months. The Parties regularly sought, and the Court granted, extensions to the proposed briefing schedule regarding responses to the Consolidated Complaint to accommodate the ongoing negotiations.

26.  After significant and contentious arm's-length negotiations, the Parties reached agreement on the substantive terms of the proposed Settlement, which were memorialized in a Memorandum of Understanding ("MOU") dated April 6, 2021.

27.  After signing the MOU, the Parties commenced negotiations relating to the attorneys' fees and expenses to be paid to Plaintiffs' Counsel in recognition of the benefits conferred on the Company through the Reforms. No agreement could be reached. As such, in connection with final approval of the Settlement, Plaintiffs' Counsel intend to request the Court's approval of attorneys' fees and expenses in recognition of the benefits conferred upon Banc through the Settlement. As provided for in the notice to be given to Banc stockholders, Plaintiffs' Counsel intend to seek a total fee and expense amount of $1.5 million. Banc expects to oppose that request.

**B.   The Settlement Terms.**

28.  The Settlement confers benefits on Banc through several corporate governance reforms ("Reforms") which are targeted at addressing the alleged wrongdoing.

29.  **Credit for Two New Independent Directors:** Banc acknowledges that the filing and maintenance of Plaintiffs' stockholder derivative actions, and the service of Plaintiffs' litigation demands, were substantial and material factors contributing to ongoing changes to the Board composition, including the recent appointment of two independent directors, James A. Barker and Andrew Thau.

30. **Credit for Enhancements to Code of Ethics:** Banc acknowledges that the filing and maintenance of Plaintiffs' stockholder derivative actions, and the service of Plaintiffs' litigation demands, were substantial and material factors contributing to Banc's decision to revise its Code of Ethics in the following ways: (1) Section 1.3 of the Code (titled "Reporting Violations of the Code"), was amended to provide that reports under this provision may also be made pursuant to the Whistleblower Hotline and to provide the telephone and online reporting mechanisms provided by the Whistleblower Hotline; (2) Section 3.2 (titled "Waivers") was amended to provide that (a) requests for waiver should be directed through the General Counsel and (b) any waiver granted to directors or executive officers, the reasons therefor, and any changes to the Code applicable to directors or executive officers, shall be disclosed in a Form 8-K filed with the U.S. Securities and Exchange Commission or posted to the Company's internet website.

31. **Formal Whistleblower Policy:** Banc agreed adopt a new stand-alone comprehensive Whistleblower Policy ("Whistleblower Policy") that sets forth in one document Banc's policies and procedures for employees to submit anonymous whistleblower reports and how such reports will be addressed. A copy of the Whistleblower Policy is attached to the Stipulation as Exhibit B.

32. **Mandatory Attendance at Shareholder Meetings:** Each member of the Board shall attend each annual stockholder meeting in person or by videoconference, teleconference, or other virtual means, unless he or she is unable to attend after reasonable, good-faith efforts, and informs the Board of his or her reasons for not attending.

33. In sum, these Reforms, which are set forth in full in Exhibits A-B to the Stipulation, lay the foundation for restoring investor confidence in the Company going forward. Weighed against the substantial risk that continued litigation would yield no benefit for Banc, the recovery here is outstanding, and well within the range of what is fair, reasonable, and adequate.

///

///

## C. The Settlement Is the Product of Arm's-Length Negotiations.

34. The Settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, and is the product of significant give and take by the Parties.

35. The Parties are represented by zealous and able counsel with extensive experience in complex derivative litigation, who have unique insight into the legal and factual issues presented.

## D. Plaintiffs' Counsel Were Well-Informed.

37. In addition, Plaintiffs' Counsel have engaged in extensive investigation and other litigation efforts, including, among other things: (1) inspecting, analyzing, and reviewing Banc's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) consulting with an accounting expert; (3) drafting litigation demand letters; (4) drafting the complaints in the Action, including the Consolidated Complaint; (5) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (6) reviewing and analyzing securities analysts' reports and advisories and media reports about the Company; (7) reviewing and analyzing the pleadings contained in the Securities Action, as well as other lawsuits relevant to the allegations made in the Action; (8) researching the Company's internal corporate governance policies, processes, and procedures, as well as those of the Company's peers; (9) preparing and submitting a detailed settlement demand and modified demands over the course of the Parties' settlement negotiations; and (10) engaging in extensive settlement discussions with counsel for Defendants regarding the specific facts of the Action, the perceived strengths and weakness of the claims and defenses thereto, and the remedies that might be secured through litigation as compared to those that could be secured through settlement.

38. The accumulation of the information discovered through the above efforts permitted Plaintiffs and Plaintiffs' Counsel to be well-informed about the strengths and weaknesses of the cases and to engage in effective settlement negotiations with Defendants.

39. As a result of those negotiations, Plaintiffs obtained a Settlement that provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation.

40. Although Plaintiffs' Counsel believe that the derivative claims are meritorious, liability was by no means a foregone conclusion. Had Plaintiffs continued to litigate, they would have faced several pre-trial motions designed to eliminate or curtail their claims, including motions to dismiss for failing to adequately allege that demand was wrongfully refused. Even if Defendants' anticipated motions to dismiss were denied, continued litigation would be extremely complex, costly, and of substantial duration. And significant risks remained in getting past any subsequent motions for summary judgment, and obtaining a favorable judgment after trial. Presuming liability was established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. The Settlement eliminates these and other risks of continued litigation.

41. Based on the foregoing, the Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement, such that notice can be sent to Banc stockholders.

## NOTICE TO BANC STOCKHOLDERS

42. The Parties seek Court approval of the proposed form and manner of disseminating notice of the Settlement to Banc stockholders. The Notice and Summary Notice are reasonably calculated to apprise current Banc stockholders of the pendency and terms of the Settlement of the Action and afford them an opportunity to present their comments and objections, if any. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (holding that notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

43. Specifically, the Parties have agreed that Banc shall cause the Stipulation of Settlement and Notice to be filed with the SEC along with an SEC Form 8-K or other appropriate filing, and Banc shall publish the Summary Notice one time in the national edition of *Investors' Business Daily*. Banc shall also publish the SEC filing with attachments on the Company's website until the judgment becomes Final.

44. Further, the proposed Notice and Summary Notice describe in plain English the terms and conditions of the proposed Settlement, including: (a) the facts and considerations that caused the Parties and their respective counsel to conclude that the proposed Settlement is fair, reasonable, adequate and in Banc's best interests; (b) the procedure for commenting and objecting to the proposed Settlement; and (c) the date, place, and time of the Settlement Hearing.

45. As explained in the accompanying memorandum, the use of publication notice, coupled with an SEC filing and website posting, has been widely used in similar stockholder derivative settlements and approved as meeting due process. Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and manner of notice to Banc stockholders.

**PROPOSED SCHEDULE OF EVENTS**

46. In connection with preliminary approval of the Settlement, the Parties respectfully request that the Court set a schedule for: (a) dissemination of notice of the Settlement to Banc stockholders; (b) Banc's stockholders' comments or objections, if any, to the Settlement; and (c) the final Settlement Hearing. The Parties propose the following schedule:

| | |
|---|---|
| Banc to file the Stipulation and Notice with the SEC; publish the Summary Notice one time in *Investor's Business Daily*; and publish the Stipulation and Notice on Banc's website | 10 business days after Court enters the Preliminary Approval Order |
| Counsel for Banc shall file proof, by affidavit or declaration, of dissemination of the Notice | 45 calendar days before the Settlement Hearing |

| | |
|---|---|
| Plaintiffs to file Motion for Final Approval of Derivative Settlement and for Attorneys' Fees and Expenses | 42 calendar days before the Settlement Hearing |
| Banc to file any opposition to Plaintiffs' Counsel's requested attorneys' fees and expenses | 21 calendar days before the Settlement Hearing |
| Last day for Banc stockholders to comment on the settlement | 21 calendar days before the Settlement Hearing |
| Plaintiffs to file response to any opposition and/or objections | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | No less than 70 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

47. The Settlement is an outstanding result in light of the risks inherent in the litigation and the substantial cost and complexity if the Action proceeded to trial. Accordingly, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and should be preliminarily approved.

48. Attached hereto are true and correct copies of the following:

Exhibit 1    Corrected Stipulation and Agreement of Settlement

Exhibit 2    *Rommerswael v. Auerbach, et al.*, Case No. 8:18-cv-00236-AG-JCG (C.D. Cal. 2019), slip op. (C.D. Cal. Nov. 5, 2018)

Exhibit 3    *In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248-PJH, slip op. (N.D. Cal. Nov. 6, 2014)

Exhibit 4    *City of Westland Police & Fire Ret. Sys. v. Stumpf*, No. 3:11-cv-02369-SI, slip op. (N.D. Cal. May 12, 2014)

///

///

///

1  I declare under penalty of perjury under the laws of the United States of America
2  that the foregoing is true and correct.
3  Dated: August 27, 2021

4  */s/ Ashley R. Rifkin*
5  ASHLEY R. RIFKIN

1540450